CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 11 2017

JULIA C. DUDLEY, CLERK
BY: /s/ _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JASON KESSLER, | ) |
| Plaintiff, | ) Civil Action No. 3:17CV00056 |
| v. | ) **MEMORANDUM OPINION** |
| CITY OF CHARLOTTESVILLE, VIRGINIA, et al., | ) By: Hon. Glen E. Conrad<br>) United States District Judge |
| Defendants. | ) |

On August 10, 2017, Jason Kessler filed this action under 42 U.S.C. § 1983 against the City of Charlottesville, Virginia ("the City") and Maurice Jones, the City Manager. The action stems from the eleventh-hour decision to revoke a permit previously issued by the City, which granted Kessler the right to hold a demonstration in Emancipation Park on August 12, 2017. Kessler claims that the City's decision to revoke the permit abridges his freedom of speech in violation of the First and Fourteenth Amendments. He has moved to preliminarily enjoin the defendants from interfering with the planned demonstration. The court held a hearing on the motion on August 11, 2017. For the following reasons, the motion will be granted.

### Background

On May 30, 2017, Kessler applied for a permit to conduct a demonstration in Emancipation Park ("the Park") in the City of Charlottesville. Kessler intends to voice his opposition to the City's decision to rename the Park, which was previously known as Lee Park, and its plans to remove a statue of Robert E. Lee from the Park. On June 13, 2017, the defendants granted Kessler a permit to conduct a demonstration on August 12, 2017. In the

following weeks, the defendants granted organizations, which oppose Kessler's message, permits to counter-protest in other public parks a few blocks away from Emancipation Park.

On August 7, 2017, less than a week before the long-planned demonstration at the Park, the defendants notified Kessler by letter that they were "revok[ing]" the permit. The defendants further advised that they were "modif[ying]" the permit to require that the demonstration take place at McIntire Park, which is located more than a mile from Emancipation Park. At the same time, the defendants took no action to modify or revoke the permits issued to counter-protestors for demonstrations planned within blocks of Emancipation Park. In revoking the permit, the defendants cited "safety concerns" associated with the number of people expected to attend Kessler's rally. However, the defendants cited no source for those concerns and provided no explanation for why the concerns only resulted in adverse action being taken on Kessler's permit.

Kessler filed the instant action on the evening of August 10, 2017. The following morning, he filed the instant motion for preliminary injunctive relief. The motion was fully briefed and the court heard oral argument on August 11, 2017.

## Discussion

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power" and is "to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). In order to obtain preliminary injunctive relief, "a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" WV Ass'n

2

of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (quoting Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20 (2008)).

## I.     Likelihood of Success on the Merits

Kessler claims that the defendants' decision to revoke his permit was a content-based restriction that cannot survive strict scrutiny. Based on the current record, the court concludes that Kessler has shown that he is likely to prevail on this claim.

Under the First Amendment, made applicable to the states through the Fourteenth Amendment, "a municipal government . . . has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dep't of Chicago v. Mosley, 408 U.S. 92, 95 (1972). Content-based restrictions—those that target speech based on its content—"are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015).

"Government regulation of speech is content based if a [restriction] applies to particular speech because of the topic discussed or the idea or message expressed." Id. at 2227. Content-based restrictions are not limited to those that "'on [their] face' draw[] distinctions based on the message a speaker conveys." Id. Instead, they include those that "cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" Id. (alteration in original) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

Based on the current record, the court concludes that Kessler has shown that he will likely prove that the decision to revoke his permit was based on the content of his speech. Kessler's assertion in this regard is supported by the fact that the City solely revoked his permit,

3

but left in place the permits issued to counter-protestors. The disparity in treatment between the two groups with opposing views suggests that the defendants' decision to revoke Kessler's permit was based on the content of his speech rather than other neutral factors that would be equally applicable to Kessler and those protesting against him. This conclusion is bolstered by other evidence, including communications on social media indicating that members of City Council oppose Kessler's political viewpoint. At this stage of the proceedings, the evidence cited by Kessler supports the conclusion that the City's decision constitutes a content-based restriction of speech.

Content-based restrictions "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Id. at 2231 (citation and internal quotation marks omitted). Based on the existing record, the court is unable to conclude that the defendants can meet this burden. Although the defendants maintain that the decision to revoke Kessler's permit was motivated by the number of people likely to attend the demonstration, the record indicates that their concerns in this regard are purely speculative. Simply stated, there is no evidence to support the notion that many thousands of individuals are likely to attend the demonstration.

Additionally, to the extent the defendants' decision was based on the number of counter-protestors expected to attend Kessler's demonstration, it is undisputed that merely moving Kessler's demonstration to another park will not avoid a clash of ideologies or prevent confrontation between the two groups. As both sides acknowledged during the hearing, critics of Kessler and his beliefs would likely follow him to McIntire Park if his rally is relocated there. Thus, changing the location of Kessler's demonstration will not separate the two opposing groups. Moreover, given the timing of the City's decision and the relationship between

4

Kessler's message and Emancipation Park, supporters of Kessler are likely to still appear at the Park, even if the location of Kessler's demonstration is moved elsewhere. Thus, a change in the location of the demonstration would not eliminate the need for members of the City's law enforcement, fire, and emergency medical services personnel to appear at Emancipation Park. Instead, it would necessitate having personnel present at two locations in the City.

In sum, the City's eleventh-hour decision forecloses the City from demonstrating that its decision to revoke Kessler's permit and move his demonstration to another park was narrowly tailored to serve compelling state interests. Stated differently, the court finds that the scant record and the undisputed circumstantial evidence weigh substantially against a finding that the relocation of the event furthers a compelling interest and is narrowly tailored to achieve that interest. Accordingly, the court concludes that Kessler has demonstrated a likelihood of success on the merits of his First Amendment claim.

## II. Irreparable Harm

The United States Court of Appeals for the Fourth Circuit has observed that, "in the contest of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim." WV Ass'n of Club Owners, 553 F.3d at 298. Having concluded that Kessler has made the requisite showing of a likelihood of success on the merits of his claim against the defendants, the court likewise concludes that Kessler has established that he will suffer irreparable harm in the absence of preliminary injunctive relief. See Legend Night Club v. Miller, 637 F.3d 291, 302 (4th Cir. 2011) ("As to irreparable injury, it is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'") (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)).

5

### III. Balance of the Equities and the Public Interest

Finally, given the timing of the City's decision, the court is of opinion that the balance of the equities favors the plaintiff in the instant case. The court further concludes that an injunction protecting the plaintiff's rights under the First Amendment is in the public interest. See, e.g., Christian Legal Society v. Walker, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions protecting First Amendment freedoms are always in the public interest.").

### Conclusion

For the reasons stated, the court will grant the plaintiff's motion for preliminary injunctive relief. Specifically, the court will enjoin the defendants from revoking the permit to conduct a demonstration at Emancipation Park on August 12, 2017.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 11th day of August, 2017.

                                          /s/ 
                                 United States District Judge